Good morning, your honors. My name is Steve Sanders, and I'm representing Mr. Sefeldeen or the plaintiff in this particular matter. Mr. Sefeldeen is a prisoner in the California Department of Corrections. He's serving 15 to life for crimes he's committed. We brought this particular motion before the court. It involves two different aspects. One, we're talking about confidentiality in embassy mail and consulate mail. The other issue here is regarding being able to take advantage of his religious diet. He's a Muslim. And being able to have the proper foods in order for him to maintain his faith and practice his faith while he is in prison. This has gone to a summary judgment, and both of these issues have been negated based upon what the court called immunity, qualified immunity. And to begin with, if I may, I'd like to address qualified immunity in relationship to Jeffers v. Gomez, Hollow v. Fitzgerald, Browning v. Vernon. And it states that there's a two-part test of that qualified immunity. One is, was the law governing the state official's conduct clearly established? And two, under what law could a reasonable state official have believed his conduct was lawful? Now, in the first issue regarding his confidentiality of his consulate mail, we cited the case Stover v. Carlson, which was published in 1972. Now, this is the only published case, Your Honors, that involved confidentiality of mail. It discusses the confidentiality of a client, an attorney privilege, legal mail, and it includes embassy and consulate mail. And we feel that it's a published decision. It's 25 years old, and that particular decision is clearly established in law. The problem we have -- What is the clearly established rule that applies in this case? Well -- That the official should have known about? Well, it's our argument, Your Honor, that they should know that the case exists, that it did provide -- Now, what's the holding of the case, the precise holding of the case that the official should have known about in application of this case? That consulate mail, embassy mail, is held to be confidential mail as legal mail is. That was the holding in the case. And there's been no cases to overturn that. Well, what was the mail in that case? Who to? In a- Stover. In the Carlson case? Mm-hmm. I don't have that in my notes, Your Honor. Wouldn't that be essential, whether it's to your mother or your lawyer or--? No. Oh, the mail was from the Mr. Stover's consulate. He was not an American citizen. And he was writing to his consulate and his embassy about things that were happening to him in prison. And they said that they were opening his mail and reading it prior to not opening it in front of him for security reasons, but opening his mail and reading it like they do all other mail. And he objected and filed the case saying that, hey, this is confidential mail. It's not for you to be reading. We understand the pedagogical needs, security needs. You can open it up. It's supposed to be like legal mail, opened in the presence of the inmate. Now, Carlson was a district court case from the District of Connecticut, right? Yes. Yes, Your Honor. And there's no authority, as I can find, in the Ninth Circuit at this point. Well, that's true, but it was the only published decision there was on this particular issue. That's- Oh, we're not bound by that decision. I understand. You're just arguing the rationale is correct. Yes. I am. Do you know what the authority was in that case for holding that the embassy communications should be confidential? Did they just proclaim that, or was they relying on some authority? Well, no. They indicated that speaking to your embassy or speaking to your government regarding the conditions that are going on in prison and the things that need to be treated and what they can do, they felt was confidential. It sounded like a good idea to them. Yes. It sounded like a good idea to them, Your Honor. And if I may extrapolate, I'm going to bring it down to my client, Mr. Cephalin. He has hepatitis C. He's a devout Muslim, and he also is not a citizen of the United States. Well, let's get back to the embassy thing. Now, why would a guard or an official in the prison be aware of a District Court of Connecticut case that has not been followed in this circuit at all? Why would that be a clearly established rule that a guard had to follow? Well, by the same logic, Your Honor, the defense quotes unpublished case, I believe it's by Ramalogla v. Gomez, which is in the Ninth Circuit. It's unpublished. Well, that's it. It's unpublished. It's not presidential, so they wouldn't be required to have that in mind. Yeah. And this is the case they cite saying that it negates Stover v. Carlson. Okay? I mean, he would have less knowledge of an unpublished case than he would a published case. Well, we're talking about clearly established law, and we've got a judge in Connecticut, a district judge who has a good idea, and you're saying that we should say that that's clearly established law. It should be known here in the United States it falls from prison. Is that it? Well, it – one more point, Your Honor. This precedent has been used in the prison system in California CDC. Prior to his receiving an inquiry from his consulate as a result of his mail, he – this – his mail was treated as confidential. After the embassy – Are you saying that there's a prison policy that's written or that we can locate in this record that says that they shouldn't open the mail? Well, not that they should not open the mail. It should be opened in the presence of the inmate. That's the – Is there a policy that says that? Well, not that I – we've found, but that's what was happening prior to this, which is in the pleadings. If it's not in the record and if that was not the policy, how can it be clearly established that the prison official should have known this? Because they were doing it prior to the – to the inquiry from his embassy. Now, let me – let me make sure I understand you. This is to say they were doing as he thinks they should have been doing until his embassy inquired and then all of a sudden they quit doing it? Yes. Because – This – this is what my client is asserting in the pleadings. Yeah. Now, Judge Newman's opinion for the District Court of Connecticut seems like a lovely opinion, but I – I have to say I share my colleague's hesitance about saying it is clearly established law in this circuit such that damages would be available against a prison guard for failing to abide by Judge Newman's opinion. Well, I'm not going to argue that the damages issue, Your Honor. Well, I mean, but that's the issue for qualified immunity. Yeah. If we're – if we're talking in conjunction with qualified immunity, it doesn't apply. Yeah. Obviously, from what I can tell from your briefs and from our research, not only that, but Carlson hasn't been cited as used as authority in any other circuit. That's true, Your Honor. Would you be urging us to adopt the Carlson holding for the future? That's to say it might become clearly – clearly established law in the Ninth Circuit if we so hold and won't help your client, except maybe next week, but – but not now. Well, I – I understand there's some – there's some problems regarding that, particularly with the Thornburg or Abbott decision regarding the least restrictive versus security or penological needs. But to make that argument, you're going to – you can make that argument against attorney-client or legal mail as well. You know, what is – what is secure and what is not? What do they have to open in their presence and what is not? What's confidential and what is not? Because they were both put on the same level in the Carlson decision. So, yeah, I would ask you to do that. But, you know, I'm not – I understand the defendant's argument. But even if that's the case, who's to say that the penological needs are not going to – would override attorney-client privilege or the privilege of the embassy for confidential mail? Remember, we're not asking that they not open the mail, only that those – the legal mail and that mail be opened in the presence of the – That's a different issue than qualified immunity, though. Yes, it is. Okay. Well, I think we have your argument in hand. You've got about a half a minute left. Why don't we hear from the other side, and then we'll give you a chance to respond. Okay. Thank you, Your Honor. May it please the Court, my name is Jeffrey Steele. I'm with the Office of the Attorney General, and I appear on behalf of respondents in this matter. The ruling of the district court should be upheld and should be affirmed for several reasons. First, with respect to the dietary claims, prison officials did not substantially burden the free exercise of appellant's faith. They did not compel him to eat food that violated the tenets of his faith. They did not prohibit him from eating food that was acceptable to his faith. And they were under no obligation to give him a choice of entrees. With respect to the confidential correspondence issue, again, prison officials did not violate any constitutional right of appellant. They did not prohibit communication with the Egyptian consulate. They did not treat appellant any differently from any other inmate. And there is no constitutional right to correspond with an embassy in confidence. Third, the district court acted correctly in denying preliminary and injunctive relief, because appellant's claims were made moot by his transfer to a different prison. He did not exhaust his claims in the context of the prison to which he had been transferred. He did not amend his complaint to include any of those people. And the resolution of this case on summary judgment would make the issue moot even if his transfer hadn't. May I come back to the communication with the embassy point? Yes. I think the benches signaled our hesitance to find that it was clearly established law, which takes care of the qualified, which takes care of the damage issue, because if it's not clearly established law, even if it is the law, nonetheless no damages are awarded because of qualified immunity. Right. You, of course, want more than that. You want us to say clearly established or otherwise it simply is not law or should not be. I found Judge Newman's district court opinion in that Connecticut case fairly persuasive. He doesn't say anything other than if it is mailed between the inmate and his embassy or consulate, that it has to be opened in his presence. They get to open it to see if there's contraband in it. But once they determine that it's just a piece of paper, they have to give it to him and they can't read it. And the rationale that Judge Newman gives is that a prisoner communicating with his embassy or consulate may very well be, in fact may very likely be, communicating about some legal matter connected to his incarceration. Why is Judge Newman wrong on that? Well, first of all, of course, my job here today is to represent my clients. And if the order of the district court is affirmed on the basis of qualified immunity, then I'm perfectly content with that. So I don't need the court to go beyond that. However ---- Well, I'm afraid you might because the Supreme Court, in its wisdom, in Saussure v. Katz tells us we can't simply blow off something by saying, well, it's not clearly established and we don't need to tell you what the law is. The Supreme Court, as I read that Saussure v. Katz case, says first you have to tell us what the rule is and then you have to tell us whether it's clearly established. So I think we have to say what the rule is. And I must say for lower court judges, that's a nuisance because you much prefer to get rid of the case easily and say, you know, I don't have to decide that. All I have to decide is it wasn't clearly established. Right. The fact is that there simply is no constitutional right to confidential correspondence. No case has established it. How confidential correspondence with the embassy or consulate? I don't know that there's any case that has established that the inmate has a right to confidential correspondence with anybody, I mean, arguably perhaps his own counsel. How about his attorney? Well, arguably, I mean, certainly a case can be made that he should be able to correspond confidentially with his own counsel. But a foreign embassy. More than a case can be made. I think that's the law. There is no authority with respect to a foreign embassy. And a foreign embassy is not his counsel, even though. There is authority, and we've just been talking about it. It's Judge Newman's opinion for the District Court of Connecticut. That opinion. First of all, Judge Newman, in his opinion. It's Judge Newman. Now I'm a second, sir. I'm sorry. We have a Judge Newman. Yes, we do. Judge Newman cites no authority undergirding his conclusion that correspondence with a foreign embassy should be confidential. And second, while an inmate may in fact be corresponding about legal matters with a foreign embassy, so it is also true that he may correspond with any number of other individuals or entities about legal matters. That doesn't necessarily make the correspondence confidential. There are governmental entities within this country with whom correspondence may not be deemed confidential. The mere fact that it is a governmental entity doesn't make the matter confidential. You know, but we do recognize, and I'm struggling with the question. I don't think it's necessarily an easy question. But, for example, we have the Vienna Convention that requires prompt communication with the embassy or consulate when a citizen of a foreign country is arrested. Now I'm afraid we honor that mostly in the breach by not notifying promptly, and it causes all kinds of problems when we don't do that. But there clearly is some difference between notifying one's embassy or consulate when a foreign national has been incarcerated or is now imprisoned after a conviction than with just anybody or just any government because very often the government, the consulate, the government, the country of which that person is a citizen will be trying to help them in a legal matter. I mean, there really is something different about it. And that may well be, but it also may well not be, and I don't know how one determines whether that is the nature of the correspondence taking place without actually reading it. Well, what, I mean, what's the prison worried about? Are they worried that he's going to have some sort of escape plan in the letter? Or are they worried only that there's going to be a, you know, a hacksaw in the letter so they open it up once they determine the hacksaw is not there and they can give him a piece of paper? Well, it could be any number of concerns, whether it's an escape plan or other communication with, other improper communication with people outside of this country, or even whether he is threatening government officials. That is a concern that has been cited in the case law as one of the security concerns that make it necessary to monitor mail to foreign consulates. Well, what's the, is there a policy, rule, regulation within the prison system? Because if we're going to balance this up, do we have to balance the safety requirements of the prison with the benefits and all that stuff? What is the official policy here with regard to embassy mail? What's the official policy with communicating with your mother, your girlfriend, your father? What's the policy relative to opening communications? Forget about the attorney, okay? That's done. What is the policy and what's in the record on that? What is in the record is California Code of Regulations, Section 3141, that details what classes of correspondence, what kinds of correspondence the prison will treat as confidential. Frankly, I do not recall which regulations deal generally with correspondence. And I don't know if it's in the record before us. I think you're either going to tell us or we're going to find out because I think Judge Fletcher has hit on it. We have no choice under Saucier. We're going to have to make that determination up front. So if you're guiding us to 3141 and that's your best guidance, then we're going to have to go there and wherever else it leads us. That's the best guidance you can give us? At this time, yes. And so what would 3141 do for the help of this argument? I'm sorry. What would 3141 do helping us with this argument? 3141 sets forth those classes of correspondence that the prison has deemed confidential and thus those classes of correspondence in which they have balanced the security concerns and the privacy concerns of the inmate and made a determination that the security concerns are sufficiently, I don't want to say minimal, but they are not sufficiently immediate or serious that the male need be read. Now, and the embassy communication falls within 3141? No, it does not. Embassy communications are not within those classes of correspondence that the prison has deemed to be confidential. Is there any authority, legal authority, not just policy, that it is not confidential and that it is, in fact, constitutional to open mail to an embassy? I'm sorry. I didn't follow that question. Could you repeat it, please? All right. What I'm asking, you say that there is some authority that it is not a constitutional violation to open the mail to an embassy. The only thing we can find is, on that aspect of it, is whether it is constitutional or it is not. The question I'm asking, is there any authority that it is not constitutional to open the mail to an embassy? No. Other than the Stover case, which suggested that it should be, there is none. Then the other side is what I'm asking. Is there any authority to the other side that it is constitutional? There are cases that we have cited in our brief that detail the need to open mail to foreign embassies because of security concerns. I can look at our brief for the citations. I don't have them at my fingertips, unfortunately. Are those dealing with the constitutionality of it, those cases? I don't recall offhand. And are they Ninth Circuit cases? I believe you have to decide this issue preliminarily. Yes. What I'm trying to find out is, is the authority on each side. I looked at those cases. I believe they're Ninth Circuit. But, you know, I'm sorry. I just cannot recall now. Okay. Well, that sums up my ---- Fine. And we've taken you over time. So thank you very much. Thank you. We've saved just a short time. Thank you, Your Honor. Let me ask you this. Was any of his correspondence to and from the embassy labeled on the outside legal mail? I mean, that's a fairly common way of protecting mail from jail scrutiny. I understand. No, it was labeled embassy mail. That's what he put on it, consulate mail. He had it written on the outside. And, of course, when they mailed their stuff to him, it had their letterhead on the envelope. Right. So the embassy mail could have contained recipes for food. It could have contained escape plans. It could have been something other than legal mail. Yes, it could have. Primarily his parole plans, because he has to go back there. There's an INS hold on him, and he was trying to make arrangements for that, which could be considered legal. If I may just take 60 seconds, Your Honor, and touch a little bit on the religious dietary issues, under being clearly established, I'd like to just make out the point that in the briefs that we gave you, we gave you correspondence between CDC management staff about RLUIPA, what they were supposed to do, how it was to be implemented for them to be aware of it. Our argument is simply this. RLUIPA is an accommodation.  And the reason I'm saying this is because the prison has done a very good job of explaining the dietary requirements of the Islamic religion. They require to have their meats treated in a certain way, similar to that of those of the Jewish faith. And it's an accommodation to help them with that. What the prison has done is simply turned them all into vegetarians. They don't have any meat at all. And that's not an accommodation. That's a restriction. And they're not vegetarians. And particularly in light of the Cooper compromise that took place last year, for those of the Jewish faith, they're able now to have kosher meats in prison. But those of the Islamic faith are not. So my point is that that's clearly established law in our opinion, Your Honor, and we wish to consider that. Okay. And your brief's very clear on the point as well. Okay. Thank both sides for their argument. The case of Sephardim v. Alameda is now submitted for decision. The next case on the argument calendar is the United States v. George.
judges: Hug, Brunetti, W. Fletcher